Good morning, your honors. David Spangenberg for Carson Harbor Village, along with Richard Close, who's here with me on the writ of mandate issues, if the court has any questions about those. May it please the court. Sherlock Holmes said something that I think is relevant here, and that is, there is nothing more deceptive than an obvious fact. And there's one obvious fact in California, and that is, after a rent-controlled hearing, a property owner cannot file an inverse condemnation claim. That is the obvious fact. In fact, the city, in its brief, admits as much in footnote 3 on page 18, citing the California Supreme Court case of Kavanaugh. They don't file it directly, is that right? They have to go through this mandamus proceeding, and then they go back to the rent-control board. They have to win the mandamus proceeding, which is different issues and different standards than a taking claim. Footnote 3 says, as Kavanaugh explains, California has created an exception to the rule against splitting a cause of action in the case of takings claims based on administrative decisions. A plaintiff may seek a preemptory writ of mandate setting aside the injurious regulation or decision and later file an action for damages if successful in setting aside the regulation or decision. I just want to be sure I understand, because rather than relying on that footnote, I mean, Kavanaugh and Galland sort of set out the process in California, which is that you go before the, if you win the writ of mandate, then you go back to this administrative process, where they are supposed to correct the found defect, and then they, through that process, you have the opportunity to set your rent adjustment to recapture the amount of the undercompensation, the alleged taking, if you will. And then if you, either that proves to be a, you could argue it's futile to do that or whatever, or that they haven't adequately compensated, adjusted, and made economic adjustments, then you can bring your case on appeal from that, correct? Well, saying they don't want the courts to be in the position of having to make fine-tunings about what the amount of money is. Well, the specific quote is we reject any notion that a court should set a determination as to whether the rent should be 450 or 451. Right. And yet courts every day determine compensation around that. Well, no, I understand that. But, you know, those opinions, I mean, they think our opinions are wrong. The California Supreme Court has these enormous opinions. And there's obviously a lot of thought of the California Supreme Court given to this process and a lot of discussion as to why they think this process is the best way to go in an allocation between the judicial and the administrative process. And you're saying that under what, under takings law, that isn't an adequate remedy, therefore we have to consider that there's no adequate state remedy and now it's ripe to proceed. It's under the U.S. Supreme Court decision of Williamson v. Hamilton Bank. There has to be, and let me read the quote. If a state provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the just compensation clause until it has used the procedure and then denied just compensation. But the problem with that is that in balancing these issues, the California Supreme Court has given no door for a park owner to go into, or a landlord to go into, to bring a claim about his inverse condemnation claim. If you look at the decision and the reasoning of the California Supreme Court, one of the principal reasoning points is that a reasonable and fair rate of return is a range of rents. It's not one specific rent, but it is a range of rents. And so what typically happens, and what happened in this case, is the park owner comes in at the high end of the range, obviously in his best interest. The hearing is held. The information is given based on his application. What the rent board then does is close the hearing, close the hearing to all testimony. This particular rent board has no provision to call witnesses, no provision to cross-examine, no provision to do any of the things that one would have in a normal condemnation proceeding. The rent board closes the proceeding and deliberates. And in that deliberation, takes the rent that the applicant has and drops it down, in this case, to $14 and some change. There's no evidence or ability to cross-examine during this proceeding whether that $14 is still in the range. That's how they set it to begin with, right? That's how they set it to begin with. So now we're looking at the? Now we're looking at the process in which the State court will review that decision. Right. And the process is if you file an inverse condemnation claim, it won't hear it. All it will hear is a writ of mandate proceeding. And in that writ of mandate proceeding, the court is limited to the four corners of the record. And the record is the applicant's application, the closed hearing, no cross-examination, no ability to call witnesses, a 20-minute presentation and a 10-minute rebuttal, finding for the first time what the testimony will be given in a narrative form by the opposition, and then the rent board taking the matter back, closing the public hearing, and deliberating and setting a rent where there's no opportunity to question what is the basis of this. Right. Okay. Then we go to court. All right. Then you go to court. But you've gotten a mandate and you've gone. Now the rent board comes out with this decision. And the decision kicks it up to $30 a month, not the 240. Right. And then at that point you can argue that you have been undercompensated based on all the evidence that you put forward, right? Not really, Your Honor. What you can do is you can go in and the argument is not whether you have received just compensation. The argument in the cases that have been cited as a string of losses to the park owner are arguments over whether or not the rent board followed the ordinance and what the ordinance means, not whether there was just compensation in the setting of the rent, but whether the ordinance. Is there a case that says you can't raise the question of whether there was just compensation? The procedures under 1094.5 limit you to the administrative record, and that's the limitation. Essentially, the argument you seem to be making is there is no point at which there can be judicial review of whether there was a government taking which is compensable by the government. As I look at these arrangements, even with the rent review, whatever the owner is entitled to receive has to come from existing or future dwellers. The government never. The government is never in a position where there's any government compensation paid, assuming that there's a finding of a take. Is that correct? Yes. We're early on in the process. And here's, if I could just jump through the process real quickly. You go to the rent board. You get a determination from the rent board. You go to the court on a writ of mandate. For whatever reason, the writ is granted. You may not, you know, they didn't follow the ordinance correctly or they misinterpreted some provision of the ordinance. It's set back. And in going back, if for chance the rent board decides, well, we should have given you $15 or $20, then, and that denies you a fair rate of return because, you know, that's the issue you're discussing here. That money, the loss of just compensation, is to be, under California law, obtained from the tenants in possession. So I know of no other rule in the United States where those people, the public, who are receiving the benefit of the regulatory action in essence have to pay for that. I mean, this is like saying that the regulation of Coca-Cola is such that, you know, it has taken the property owner's money and now you have to collect your just compensation from the buyer. How are you hurt by having the property owner pay instead of the government? How are we hurt? We then have to collect against another party. Instead of having to collect against the government. The government is the one that has caused the injury. But who finances the government? The people as a whole. Right. So it spreads it in the California Supreme, well, anyway. It's something where all people, if there's a taking, then all people should. Let me ask you, one of the things that struck me about this arrangement as I started to look at it is it's somewhat parallel to public utility regulation. In other words, there is a commission in effect that reviews rates and so forth, and that process goes along. And there is an opportunity for review in terms of whether there's any violation of Hope Natural Gas. But here, there is no monopoly given. There's no state franchise given to this kind of grouping. Yes, that's a good point. There's no franchise given to this group. But also in the public utilities arena, you're regulating an entire state. And the state has an interest in not bankrupting, if you will, even though we've seen problems in that area, the utility. Here, what we have is we have a very local prudential group, a city, and a city council hiring or engaging people. Unlike the Public Utilities Commission that have a panoply of regulatory expertise in this area, we have basically housewives and whatnot who are appointed to do these very regulatory issues. Hey, I know some very bright housewives. I do, too. You should have a lot of California commissions. Pardon? That sit on a lot of and do a very. Of course, even decide what the lawyers can retain their licenses sometimes. But the issue is whether or not. Judges can be disciplined or decided by housewives. Maybe that's the California system. But the issue that the U.S. Supreme Court has has said is to be addressed by these very capable people is. Is the amount sufficient that the landlord may reasonably be expected to maintain financial integrity, attract necessary capital and fairly compensate the investors for the risk that they have assumed? And you're assuming that within this system, I really am interested in understanding. You're saying that because of the system, notwithstanding all of the talk in the Supreme Court case, the California Supreme Court cases about the process evolving in a way that you will, your clients will get, albeit from the tenants and albeit over time, justly compensated a reasonable or fair rate of return in any event, taking into account your arguments that there really is no opportunity for you realistically to litigate that. Well, let me go back to what Mr. Holmes said. There is nothing more deceptive than an obvious fact. You never get a trial. You never get a trial on whether you maintain financial integrity, you can attract necessary capital, and you are fairly compensated for the risk you assume. What you get a trial on at best in front of the rent board is the 11 factors in the rent ordinance. What is the change in the consumer price index? What is other rents in other areas? Et cetera, et cetera. And you never get a chance to cross-examine any of that information. You hear that information in a narrative form. If there is a range of rents that are fair and reasonable and just compensation, you come in at your level and without any evidence to support that you are maintaining financial integrity and all of the other elements, the rent is set, and you never get a chance to have a trial on whether or not that decision, the final result, is a fair and reasonable return to you. Are these rent ordinances variable by city, or is there sort of a master ordinance that... They're all different. There's 110 mobile home park rent control ordinances in the states and 110 different counties and states. They're all different. Some of them are clones of others. Some have variants depending on local politics. The point I'm making here is that, and the obvious fact, is you never get to a trial on what is the net result of this decision. Now, proving a regulatory taking is not an easy process. You know, it's not something that is easily done in a courtroom with all the evidence and everything else. But what I'm saying is there is two things. I'm saying, number one, the trial process, you never get a trial. All right, but do you get to put in, as part of your application for the rent increase, the evidence that you believe would show what is required to get a fair rate of return? Yes, you get to put in what you think. That's part of the record. You get to put in, and again, it's a range of rents, but you get to put in your evidence that this is what you need to compensate you for your expenses, to maintain financial integrity, et cetera. And what happens is the rent board then makes a decision substantially reducing that amount, based on a narrative that you cannot cross-examine or anything. You cannot call witnesses to rebut that information. That information is given to the board by tenants and whoever wants to get up and speak and make any unfounded statement they want. And if that scintilla of evidence is there, unexamined by cross-examination, and a court in a writ proceeding looks at that scintilla of evidence and says that under the 1094.5 administrative proceedings, there is evidence to support that decision, you lose without ever getting a chance to prove through cross-examination and all of that, that you have not gotten enough money to attract capital, maintain financial integrity, and compensate your investors for the risk that they have assumed. Are you attacking the ordinance itself? No. I am only attacking that we applied for a rent increase, and now we are at the point where we want a court to review what is the result of that decision. Are you receiving just compensation from that decision that was rendered by the board? You are arguing futility. You are arguing futility. I'm saying that the State of California doesn't have an adequate remedy for two reasons. The first reason is we never get a trial on the issue of ‑‑ Well, of course you get the relief. You don't care if you get a trial. If you filed a writ amendamus, the court said, look, we think you ought to get a $1,000 increase. No, they can't say that. They can only send it back. You didn't get the right increase. No, you didn't follow the ordinance. You didn't follow the rules. And therefore, we're vacating the decision. We're sending it back for another hearing. Okay. And then the board gives you $1,000. You wouldn't have a problem. Well, then what we have to do is you have to be compensated for the loss. This process may take a number of years. And you should have gotten ‑‑ in our particular case, the application was for the year 1999. And in early 2001, the board determined that for the year 1999, you did not get a fair rate of return by $14. Now, if one challenges that and goes through the judicial process, you may be four or five years out from 1999 before you find out that you didn't get a fair rate of return in 1999. Now, who pays the $14? Can you retroactively increase the rents on the 1999? No, that was the supplemental application. The supplemental ‑‑ after the rent board in 2001 determined that in 1999 we did not get a fair rate of return by $14, a few months later we filed a supplemental application saying, look, you have already found as a matter of law that we did not get a fair rate of return in 1999 by $14. We are now seeking a surcharge rent increase from our tenants for the 1999 year. We didn't get a ‑‑ for as you have found, board, and 2000. That's the so‑called regulatory lag. And that's the regulatory lag application. We have an appeal up here. That's not the appeal. No, that's up here also, Your Honor. We have ‑‑ and the city attorney, and we filed the application, and the city attorney said we refuse to process your application. California law does not allow an application for regulatory lag. And so that's a $250,000 regulatory lag. Not our fault. It's the, you know, but Golan and Kavanaugh. You could raise that on mandamus or not? It's part of the writ proceeding. But, again, the question is, did they follow ‑‑ in the writ proceeding, did they follow their ordinance? Not are you denied just compensation? Because that's not what's on trial in a writ proceeding. What's on trial is did you follow the rules? You can follow the rules and still take property. You can follow the rules of development, the rules, all the rules can be followed. The coastal commission rules can be followed. It still may result in a taking of property. And all we are saying is the court in California doesn't give us a chance to plead an inverse condemnation claim. They only give us a chance to challenge whether the regulations were followed, whether it's a taking or not. And we say that's an inadequate remedy. But even if you were lucky enough to win that, then the courts in California go on to say if you win that and you were denied just compensation, then you should get a rent ‑‑ you should not get money from the government for its mistake. You should get rent increases from your tenants to cover that. And that's an adequate remedy. Kennedy. That's where I don't see why that hurts you if you're told you're going to get the money from the tenants instead of the government. Well, in Kavanaugh ‑‑ I mean, it's nice to save the government money. But who cares from your standpoint where the money comes from? Well, I don't think that that's ‑‑ I know of no law that supports that notion that the compensation can be paid by other than the government. Well, you said the California court said that you could get it from the tenants. The court said that you could get it from a tenant. But as Kavanaugh said in its factual recitation, for him to get the rent increase from the tenants necessary to compensate him, his rents would be overmarket and he would empty his buildings. If you win, let's suppose you go ‑‑ you get the mandamus, you go back to the rent control board, and you've gone through those various hurdles and you think you have not been adequately compensated. What action ‑‑ can you then bring an inverse condemnation action? No, you can never, never. Can you bring a 1983 act? No, never, never. It's the future rents that the California Supreme Court articulated. What's your remedy? What are you saying your remedy is at the end of the mandated ‑‑ The remedy at the end of the rainbow is you get a rent increase from your tenants and whether they ‑‑ I don't think that's right. You are saying that under the California system, I don't think that's ‑‑ you don't understand my question. Maybe. Let me try again. I understand you don't like the $14 rent increase. You think you should have got 245. Okay. Under the California Kavanaugh process, you have to get a writ to the rent control board to follow the procedures and give you, in your view now, having won that step, have them adjust it upward to what you think to be a fair rate of return. But they don't do it. Okay. Now you've gone through those series of hurdles. Now what are your remedies under state law? You have now had a second hearing in front of the rent board, and now you take a second writ. So you just keep going back under this Kavanaugh adjustment? Yes. It was the same as when Agnes v. Tiburon was the law in California. The only thing you had was a writ of mandate remedy which could invalidate the decision and send you back. And it was referred to by the pundits as the ping pong theory of justice, where nobody ever made the correct decision. You were just ping‑ponged back and forth. You'd get a decision. You'd go to the court. The court would overturn it but had no authority to award anything. You'd go back to the agency that violated your rights. In the first place, as found by the court, you'd have another hearing. They would do whatever they want. You could take another one. You could never get a court resolution that says this is what happened, this is what you're entitled to. Okay. Thank you. Ms. Carlson. Good morning. Rochelle Brown for Apelli's City of Carson and City of Carson Mobile Home Rent Control Board. First, I would like to address the California procedure. Thank you for coming out to be proximate to the Rose Bowl. You can go back and tell the folks that the NFL really should be in Carson. Sorry. Couldn't resist. It is true, as counsel said, that Kavanaugh said there's an exception to the rule against splitting a cause of action in that a plaintiff may first seek a writ and then later file a subsequent inverse condemnation action. But if you read the language in Kavanaugh, it also states that the plaintiff has the option of joining an inverse condemnation action with the writ action. So an inverse condemnation action can be filed either way. Ordinarily, a plaintiff would have to bring all their claims about one government action in the same action. They're allowed to do it in two separate actions. That's all that language in Kavanaugh means. Is there any case that has actually dealt with that factual situation? Well, Kavanaugh and I know of some unreported trial court decisions that have, but nothing that I can actually cite on the record. But Kavanaugh and Golan both deal with what happens in that situation. Well, there are – there is a – I'm sorry. In those two cases, it seems to me this is very circular. There's a reference to ping-pong. Well, no, because what – But, I mean, essentially, you're confined to the writ of mandate process, which – That is not correct. All right. Well, show me where – where – Okay. All right. What I'm trying to find out here is where that process ultimately ends. All right. First, they're assuming that the writ is granted. In other words, the Court found that the Rental Review Board did something wrong, right? And it could be denial of a fair return.   It's not a fair return. It's not a fair return. Or some failure to proceed the way they were supposed to do. A variety of things could result in a remand. And there are generally instructions as to what the Rental Review Board is supposed to consider on the remand. It isn't just it's set aside, do it again. It's do it again in light of this Court's opinion. So it's not unfettered discretion on the remand. But assuming that the Rental Review Board does not do the right thing, does not adequately compensate the landlord, the landlord then brings an inverse condemnation action. That is, if he didn't do it in the first place. If he did it in the first place, the Court retains jurisdiction to see what the Rental Review Board has done to comply. And that can be brought back before the trial court if it's all been done in one action. If it wasn't done in one action, then the park owner brings an inverse condemnation action. And Goland and Kavanaugh both say that the landlord can do that. Is there any case where the landlord has actually succeeded in doing that? There is a case that I'm now aware of that's pending in the California Court of Appeal that hasn't been decided yet where that happened in the trial court. Well, actually, in that case, the writ of mandate was granted and the court proceeded immediately to an inverse condemnation and substantive due process trial and awarded damages to the landlord. That is now pending in the California Court of Appeal. But I obviously can't give you a citation. There's no reported decision yet. But I would like to direct the Court's attention to Goland, 24 Cal 4th, 24 Cal 4th, at page 1025, where the court explained. I've got it here. I want to see where you're reading. Okay. 1025? Yes. The second full paragraph discusses what is going to happen. And they note that in Kavanaugh, they didn't address what would happen if what alternative remedy would be available if the remand, the increased grant on remand wasn't sufficient. And here they say that a landlord can bring a Section 1983 action if they've gone back to the Rent Review Board. And it says, accordingly when landlords seek Section 1983 damages from allegedly confiscatory rent regulation, we hold that they must show that a confiscatory rent ceiling or other rent regulation was imposed. Confiscatory being used as a synonym for denial of a fair return, which the cases then say is a taking. And that relief via a writ of mandate and a, quote, Kavanaugh adjustment is inadequate. The Kavanaugh adjustment is supposed to not just give the larger rent increase that should have been given to begin with, but to make that rent increase large enough so that it compensates for the loss that was incurred by insufficient rents to begin with. So it is intended to be a complete compensation remedy. However, they can bring an inverse condemnation action afterwards if it is not. And the first thing, I noted the 1983 earlier. That's why I was asking earlier the question about 1983. Where do we find this process that you talk about in either Galiland or Kavanaugh where it talks about the inverse condemnation option? Well. Because you're describing it. I mean, your description of this process and counsel for Carson Harbor are diametrically opposed. So, in other words, he's told us there's absolutely no opportunity for either an inverse condemnation or a 1983 action once. I think that is a misreading of Kavanaugh and Galiland, and it is directly contrary to the express language of those cases. Right. So now you've pointed out the 1983 language, which says. That's because in this. Where's the inverse condemnation? Well, we could go back. Where do we find that? We could go back to. Kavanaugh. To Kavanaugh to find that. In most cases, when a Federal constitutional violation is alleged, whether it's inverse condemnation or some other claim, it's usually brought under Section 1983. Mm-hmm. So, because in fact. Or substantive due process or equal protection or procedural due process. Right. Which the California court views as essentially a synonym. That's correct. Although they would certainly accept a claim that someone said this is inverse condemnation under the California Constitution and under the Fifth and Fourteenth Amendments. People do it both ways. So, when the terms inverse condemnation and 1983 actions are being used in the California Supreme Court opinions, it's your understanding that they're referring to the same process, really. Yes. Go ahead. Either form gets you a trial on whether you've got a fair rate of return. That is correct. And I would also like to point out. It's a little odd to me that Section 1983 should be a device by which one can obtain compensation for a taking. Normally, 1983 is used for claims of unconstitutional conduct by individual local officials. Actually, and I didn't realize this would be an issue, so it's not in my brief, but I'd be happy to provide a citation later. In the Ninth Circuit, you must bring a taking action under Section 1983. That's how all the cases deal with them. I'd be happy to provide a supplemental. The Ninth Circuit rule, or is this a 19, excuse me, is this a, are we looking at Section 1983 as a claim which should be brought in the Federal court as opposed to the State court? Well. Because the State court has an analog, does it not? The rule is that a Section 1983 case can be brought either in Federal court or in State court.  And the rule in the Ninth Circuit is that if you're going to allege a taking, you do it under Section 1983. And I'm sorry, I don't have a citation to provide you. Okay. But Federal or State? Oh, so a State court, because there's concurrent jurisdiction, a State court will hear a Section 1983 case. People frequently. Can you tell us when Section 1983 is referenced on page 10 or page 1025, is the contemplation of that reference that that is a case that would be brought possibly in the California courts or in the Federal courts only? Well, I see this is talking about bringing it in. In this context, my best understanding of this is that they're talking about bringing it, excuse me, in State court. But I see no reason whatever why it couldn't be brought in Federal court. Okay. And are you saying that the California court entertaining a concurrent jurisdiction on 1983 would follow the Ninth Circuit rules and say that, therefore, any takings claim brought, whether it's in the Ninth Circuit Federal or it's brought in California, would have to be for our interpretation? Well, no. Have to be brought as a 1983 action? I think what the California courts would say, it could be brought either way. Either way. And you can always bring, yes, you can. They can always just file an inverse condemnation action, and they would probably be done under both the California Constitution and the U.S. Constitution. I thought you said earlier that there are two different things, an inverse condemnation and a Section 1983. Did I get that? Did I misunderstand you? If I said that, I misspoke. In other words, you're synonymous? No. Section 1983 action can encompass many other things. It could be a substantive due process claim. It could be a legal protection claim. Okay. I'm talking about the flip side of that. If you want to bring an inverse condemnation claim, you are in a you are required to do it pursuant to 1983. If you're in Federal court. And what about State court? In State court, you could do it either way. And where is the Kavanaugh? You were going to give us the Kavanaugh cite for the inverse condemnation action? Well, Kavanaugh involved an inverse condemnation claim. The Court, however, you have to know the history of Kavanaugh, I guess. First, there was Kavanaugh 1, the California Court of Appeal decision which did not go up to the California Supreme Court in which the California Court of Appeal found that the Santa Monica Rank Control Board had violated Kavanaugh's constitutional rights. It was not clear from that decision whether the violation was inverse condemnation and taking or was the substantive due process violation. The California Supreme Court goes through all the major United States Supreme Court decisions on takings and applies that law to these facts and concludes that there wasn't a taking. And because the Court of Appeal in the prior action had found a constitutional violation, they decided that it was a substantive due process violation. And but whatever you call it, the California Supreme Court in Kavanaugh decided that there had to be a compensation remedy for this constitutional violation. Now, the compensation remedy was a rent increase that would not only increase rents for the future but make up for the lost rent in the interim. So even though Kavanaugh didn't call it a taking, they provided a compensation remedy. Yeah, but as I read, just take the last paragraph of Kavanaugh. It just seems to hold that your remedy is the rent board. And you keep going back to the rent board. And so long as there is the potential that you, it says, recognize that Kavanaugh is continuing to write under the due process clause to future rent adjustments that will enable him to earn a fair return. We believe he has not suffered a taking. And that's very circular. He keeps, he goes back to the rent board, and they make an adjustment, and they go back again. And there's never a point at which the inverse condemnation as such, outside of the rent board process, can be looked at. Well, two points. First, Kavanaugh, at page 785, the second full paragraph at the bottom, it says, finally, we do not decide here what alternative remedy might be appropriate if a landlord can establish that the remedy of future rent adjustments is for some reason unavailable. Now, Kavanaugh, the land came after Kavanaugh and clarifies that. And that was the paragraph I cited to you at page 1025. Now they're saying what's happening. If the future rent increase, the, quote, Kavanaugh adjustment, is not sufficient, then there's an inverse condemnation or Section 18, 1983 remedy, and you go to trial on that. Well, the Caron says quite clearly that if a Kavanaugh adjustment proves to be inadequate to establish an average reasonable rate of return, then they're free to pursue a Section 1983 action on the grounds that State equitable remedies have failed to prevent a constitutional injury from occurring. Now, the question is, Judge O'Scanlan says, well, you've got to keep going back forever. If it takes you 20 years and you have 20 hearings before the board. No, I do not read either of these cases that way. I'm going to ask you, is there any case that says whether, when Kavanaugh proves inadequate, whether you have to go back repeatedly to the same board for when, when a court would determine what process does not, is not adequate to provide you with a fair rental? Whether the Kavanaugh remedy was adequate would be decided in the first instance by the trial court. The landlord comes back to the trial court, either in the same action or in a subsequent one, and says, this wasn't. Well, let me ask you a question. Yes, he comes back. And the court. You get the remedy in the mandamus proceeding. You say to the board, they haven't gotten just compensation, you haven't followed the right procedures, and the board comes up with another nickel. The question is, do you then have the right to file a 1983 and say this process isn't working, or do you then have to file another writ of mandamus, and do they have to tell the board a second time, or a third time, or a fourth, or a fifth? Is there any case on this question? Now, here we've got somebody who hasn't even gone the first time. But suppose they had gone three times. Would that ñ would we then be able to say the Kavanaugh remedy is inadequate? Well, here there hasn't been the first step, because you have to go to federal court first. But had they gone for a writ of mandamus, gotten one, come back to the board, they were still dissatisfied. They went and got another mandamus and came back to the board and were still dissatisfied. I do not ñ they would not have to bring another mandamus action. They would say to the court, look, we've gone all through this. Kavanaugh adjustment was not adequate. We're bringing our inverse condemnation action. But what I'm asking you, is there any case that says you either do or don't have to go repeatedly to the board? Is there any case that says this does or doesn't constitute exhaustion, in effect, that you haven't shown? No, there is no reported case, to my knowledge, that deals with that situation. My reading of ñ as I said, I know of one case that's pending in the California court of appeal where there was an inverse condemnation trial. But I ñ it's not reported. And ñ but as I read Galland, once you've shown you simply have to go back to the trial court and show that Kavanaugh adjustment was inadequate. So just so I understand that, the process is ñ let's take the Paradigm case. This case, which did not combine the inverse condemnation claim with the Mandamus-Kavanaugh claim, assuming that we go ñ they go through. So they file. They get the Mandamus to the Carson Rent Control Board, go through the Kavanaugh hearing adjustment, come out dissatisfied. At that point, they could then go back to the trial court, either under retained jurisdiction or a new action, and they could combine ñ would they be ñ would it be another review, another Mandamus action combined with an inverse condemnation action? Or they could simply file it as an inverse condemnation action and say, we've done it. Or do they have to come back, I think is what Judge Reinhart was driving at. Does the cycle contemplate that you go through once, and one of your options is to come back, maybe mandated or voluntary, I'm not sure which, come back to the trial court and say, they still aren't doing it right. So we want another Kavanaugh hearing, or do they come back and say, now we've ñ we've exhausted. It was ñ anything more is just a ping-pong, circular, futile. Now let's proceed with inverse condemnation. I believe they could proceed with inverse condemnation. First there would have to be a determination by the trial court that the Kavanaugh adjustment was inadequate. Okay. So they do review that. So they're going to look at that to see whether it's adequate or not. But it's not going to be this continuing circle that you're talking about. Yeah. But when you say adequate, and this may get to the circularity issue, is it adequate as tested against the text of the local ordinance, or is it adequate under the conventional principles of takings under the U.S. Constitution? It would be a question of whether it meets the rules of the cases of our confiscatory takings. There's ñ Gellon says, if, however, a Kavanaugh adjustment proves to be inadequate in this case, to reestablish an average reasonable rate of return. Now, Judge O'Shaughnessy's question, I guess, is does that mean an average reasonable rate of return in light of this particular ordinance, or does it mean an average reasonable rate of return as contemplated under the Constitution? As contemplated under the Constitution. As contemplated under the Constitution. Obviously, that's ñ that's your view. But what's the authority for that view? Well, my reading of these cases was that they are authority for that proposition, and there is no case holding otherwise. It's pure speculation that you would be trapped. Now, in the case of a particular appellant in this case, and he talked about, you know, not being able to bring an inverse condemnation action, and that's because in every one of the cases that this appellant has brought, the Court has found that there was no error by the Rent Control Board, and one of them says there was no denial of a fair return. And that's the setting. That was the genesis of my question. That's the genesis of my question, the point being that the Court has made a determination within the meaning of the Rent Control Ordinance as to whether there was an appropriate return. I think I need to explain something about the ordinance. It allows for three different kinds of rent increases. One is a capital rent increase procedure, which has no bearing here. The other is a procedure where, which happened in this case, where income and expenses and profit statements are presented, and the Board looks at the changes that have occurred since the last rent increase to provide increases that allow gross profit to increase with a certain percentage of the increase in the CPI since the last hearing. It also provides for, and this is at page 57 of the city's excerpts, for what is called a fair return application, where, and these applications can be combined or heard at the same time, where a landlord can say, for any number of variety of reasons, this other rent increase procedure that you have doesn't provide me with a fair return, and provides for the submission of all kinds of evidence on that issue. Has that provision ever been tested in a California court? No, there have been proceedings under that provision where park owners in Carson have gotten increases, but they got increases and those issues never went to court, were never challenged, because they were satisfied with the result. The point is, in this case, that kind of application wasn't made. You can see that from looking at the claims that they've made that certain expenses were disallowed, and they've claimed that they've been denied a fair return, not based on any evidence of what their return is or what similar enterprises earn, but simply on the fact that they haven't been allowed to increase their 1979 profit by 100 percent of the increase in the CPI. And your view is that if that procedure is followed, the fair return application procedure is followed, that is reviewable in a California court? Oh, absolutely. Everything the Board does is reviewable in the California courts. I did want to address the compensation question. I think we've almost doubled your time already. Oh, I'm sorry. I just did want to respond about the question of whether compensation has to be paid by the government. If you can do it in one minute. Yes. I would cite the court to Penn Central Transportation v. New York, which is cited in my brief. And there it says that compensation need not necessarily come in the form of a payment by the government. It can be in the form of things like transfer of development rights and reciprocal benefits. There's no need that it be paid in dollars by the government, and I think that's the most directly relevant authority on that point. That and the fact that when you're talking about whether a taking has occurred, you always look to see what the injury is to the person claiming the taking, rather than to any benefit to the government. Thank you. I'd like to be very brief, Your Honors. I'll get back to my original point, which is there's nothing more deceptive than an obvious fact. And the obvious fact is you cannot bring an inverse condemnation claim in California. It's not obvious to your opposing counsel. Okay. I understand. And this is where I think a page of history is worth a pound of all this logic. Well, you've got a lot of those things. A picture's worth a thousand words. Yes, I know. They're always good to hang your hat on. If we look at Kavanaugh, Kavanaugh was a case where he filed a writ. This is a normal procedure for how you review these things. He filed a writ. He won. Now, he didn't get a trial on inverse condemnation. He got a trial on the writ, and he won. And the Court said, well, the decision was a taking, based on whatever his argument was. That was affirmed by the Court of Appeal. After that was completed, the Supreme Court denied review. After that was completed, he did what you have to do. You must first win the writ before you can file the inverse. And so the second action was the inverse condemnation claim. The California Supreme Court got a hold of it, and they said, well, we've looked at the writ record, and we don't think that's a taking. But he never had a trial on whether it was a taking. It was all based on the record. But the Supreme Court said, we've looked at the writ record and disagree with the Court of Appeal decision that that's a taking. But assuming it to be a taking, he cannot get just compensation in California by an action against the government. He must get a Kavanaugh rent increase. He must go back to the rent board and get a rent increase. So that's the process. Kennedy. It's on Gallin. What's the 1983 action? Okay. And Gallin tried the alternative approach, which is to say, there's no taking claim in California, so I'm not going to bring a taking claim. I'm going to bring a 1983 claim. And in that 1983 claim, there was a trial under 1983, and the trial court determined that the rents should have been X instead of Y and awarded quite a few hundred thousand dollars in damages. That went up to the California Supreme Court, and the California Supreme Court said, wait, it would be incongruous for us to decide that you can get compensation from the government. You cannot get compensation on a taking claim, but you can get compensation under 1983. And so we decide that the Kavanaugh future adjustment of rents vitiates your 1983 claim. And they overturned it. No. It says here it's a precondition to show that that other is not sufficient. It doesn't say it vitiates it. No. It doesn't say you can't ever bring it. Gallin says that Gallin overturned the award. Well, I understand. But you're saying it vitiates it. That says you just never get it. And that's what your impression was. Well, I'm sorry. I don't mean to overstate. I was just reading what it tells you. How do you explain the language of 1025? That's what it says. That's what Gallin said. Well, let me quote what Kavanaugh says. No, let's quote what Gallin. You can do that maybe, but I'd just like to understand 1025, because that's what I understood to maybe overly simplistically to say that essentially Gallin was squaring, as you say, the two processes with the Kavanaugh need for a Kavanaugh adjustment. You had to show before you could bring a 1983 action that that Kavanaugh process wasn't adequate. Yes, you'd have to. And then if you did, then you could go ahead and bring a 1983 action. And there's two grounds under which you could do that under Gallin. One is if the rent board failed to follow clearly articulated law, then you could bring that against the rent board. And the other is somehow you could prove that the Kavanaugh adjustment was inadequate. But where is the forum that you go to to prove this? And let me go back to Kavanaugh, which tells you where the forum is. At page 784 of Kavanaugh, the California Supreme Court says, courts are in no position to determine the appropriate rent ceiling for an apartment as a means of assessing damages. We strongly resist any rule that would impose on a reviewing court the impossible task of finding somewhere in the penumbra of the Constitution a stipulation that a particular apartment in a particular building should have rents of $4 or $7.46 per month rather than $7.45. But then in Gallin, it says it might be a different matter if there were evidence that a government agency has proven to be unwilling or unable to conduct the proper proceedings on remand. It says if they engage in further needless delay, then a writ of mandate to the trial court may legitimately request that the court intervene to set the proper rental rates, and the city may be liable for Section 1983 damages. So there are occasions in which the city has behaved unreasonably. And the court says you may then get not only have the court set the rate, but they may also order damages. The fallacy with that, Your Honor, as a practical means to getting just compensation is that when you go in front of the rent board, the rent board is not trying an inverse condemnation claim. It is applying an ordinance. It is applying the provisions of an ordinance. And so in that proceeding, which is the ---- It's supposed to give you a reasonable return. Not ordinance. As counsel said to us, that was one of the three things that you could request, a reasonable rate of return, in which case ---- The hearing on page 33 of the record, if you look at the ordinance, the hearing determines one thing, and that is page 133, subdivision G, in the middle of the left-hand column. The board shall grant such rent increase as it determines to be fair, just, and reasonable. A rent increase is fair, just, and reasonable if it protects homeowners from excessive rent increases and allows a fair return on investment to the park owner. The board shall consider the following factors and any guidelines adopted by the city council, as well as any other relevant evidence in making its determination, and no one factor shall determine it. Our application goes in for $100. There's a range of rents that are reasonable. It drops it down to something else. There is no evidence. There's no way we can cross-examine whether that maintains financial integrity, compensates the investors for the risk they've assumed, and all of the other constitutional requirements. We go on a rip to a court, and we say, look, we were denied a fair rate of return. They say, no, they were following the ordinance, and we send it back. This is why at the beginning I said you were challenging the ordinance, because it seemed to me that you keep coming to this argument that the ordinance is procedurally defective or invalid. But you say you're not doing that. It's the California process, as articulated in Galland and Kavanaugh, that is the problem. We never get a day in court to test the result of the rent board decision. All right. Thank you very much. Thank you both very much. Thank you. I think we understand a little bit more about this than we did before. We'll do our best to learn the rest. But we will now submit that case and take a brief recess.
judges: Reinhardt, O'scannlain, Fisher